John P. Schnurer, Bar No. 185725
JSchnurer@perkinscoie.com
Yun (Louise) Lu, Bar No. 253114
LLu@perkinscoie.com
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA 92130-2594
Telephone: 858.720.5700
Facsimile: 858.720.5799

Attorneys for Plaintiff
LUCENT ELECTRONIC CO., INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TRANS ELECTRONIC CO., INC.<br><br>Plaintiff,<br><br>v.<br><br>FOREIGN TRADE CORPORATION D/B/A TECHNOCEL, TYLT INC., RAMIN ROSTAMI, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:18-cv-18-8638<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT**<br><br>**(2) ANTICIPATORY BREACH**<br><br>**(3) PROMISSORY ESTOPPEL**<br><br>**(4) UNJUST ENRICHMENT**<br><br>**(5) FRAUDULENT MISREPRESENTATION/ INDUCEMENT**<br><br>**(6) NEGLIGENT MISREPRESENTATION**<br><br>**(7) FRAUDULENT TRANSFER** |

Plaintiff Lucent Trans Electronic Co., Inc. ("Lucent"), a Taiwan corporation, for its Complaint against Foreign Trade Corporation d/b/a Technocel ("Technocel"), TYLT Inc. ("TYLT"), Ramin Rostami ("Rostami") and DOES 1 through 10 (collectively, "Defendants"), respectfully submits the following and alleges as follows:

## NATURE OF THIS ACTION

1. This action seeks money damages against Defendants, who acted as alter egos and a single enterprise to defraud Lucent to manufacture and supply power chargers to Defendants, but wrongly did not pay for those power chargers ordered and/or received from Lucent.

2. Lucent seeks recovery of amounts owed for those chargers, and, herein asserts causes of action for breach of contract, anticipatory breach, promissory estoppel, unjust enrichment, fraudulent and negligent misrepresentation, fraudulent inducement, and fraudulent transfer. These claims against some of the Defendants are based on alter-ego liability and piercing the corporate veil.

3. Lucent also seeks to recover litigation costs, investigative costs, pre-judgment and post-judgment interests, attorneys' fees and punitive damages from Defendants. Lucent further seeks recovery of assets and money transferred from Technocel to TYLT when Technocel was insolvent under California Civil Code §§ 3439.02, 3439.04 & 3439.05, and a preliminary and permanent injunction against Defendants from them further disposing or dissipating any of the funds transferred from Technocel.

## PARTIES

4. Plaintiff Lucent is incorporated under the laws of Republic of China, Taiwan, with its principal place of business in 9F-1, No. 16, Chien Pah Road, Chung Ho District, New Taipei City, Taiwan. Lucent manufactures cellular phone accessories and computer peripherals, including power chargers. Founded in 1990, Lucent has nearly thirty years of experience and know-how in switching power

supply, power chargers, multimedia, IP Camera and computer peripherals.  Lucent sells power chargers worldwide, including North and South Americas, Europe, Russia, the Middle East and Asia.

5. Defendant Foreign Trade Corporation d/b/a Technocel is a California corporation, having its principal place of business in 685 Cochran Street, Suite 200, Simi Valley, California.  Technocel is an international distributor of wireless accessories, including power chargers.

6. Defendant TYLT is a Delaware corporation, incorporated on June 7, 2017.  TYLT and Technocel share the same principal place of business.  TYLT holds itself out as merely a different name for Technocel, and, thus, is Technocel's alter ego.

7. Defendant Ramin Rostami ("Mr. Rostami") is a California resident and holds executive positions at Technocel including Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO), while his wife, Fariba Rostami, is Secretary.  Mr. Rostami has held himself personally liable for the amount Technocel owes Lucent for the power chargers supplied to Technocel, as he should, given he is Technocel's alter ego.  Mr. Rostami is also the sole shareholder of TYLT and his capital contribution is $5,000, which is inadequate as described herein.  On information and belief, Mr. Rostami is TYLT's alter ego.

8. Lucent does not know the true names and capacities of the defendants sued as DOES 1 through 10, inclusive, and, therefore, sues these defendants by such fictitious names.  Lucent will amend this Complaint to allege the true names and capacities of DOES 1 through 10, inclusive, when ascertained.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) as all Defendants reside in this judicial District. Venue is also proper pursuant to 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

**A.   Defendants' Contracts and Transactions with Lucent**

11. Starting in April 1999 and continuing through at least November 2017, Lucent and Technocel entered into a series of contracts ("Contracts") and engaged in a course of practice where Technocel would issue purchase orders to Lucent for power chargers, Lucent would manufacture and supply those power chargers pursuant to the terms specified in Technocel's purchase orders, and Lucent would then submit invoices to Technocel for those power chargers, which included a payment term as net 60 days after delivery. Until December 2016, Technocel would pay the invoiced amount pursuant to the payment term of invoices delivered to Technocel for the supplied power chargers.

12. Beginning on or about December 2016, Technocel failed to pay the invoiced amount pursuant to the payment term of the invoices delivered to Technocel. As of May 31, 2017, past-due invoices amounted to $2,672,057. Between June to November 2017, Technocel continued ordering power chargers from Lucent totaling around $5.786 million in value, which Lucent timely delivered to Technocel and subsequently invoiced Technocel for that amount.

13. To induce Lucent to continue shipping power chargers to Technocel, Mr. Rostami agreed to pay the amount Technocel owed Lucent in installments. For example, on around February 15, 2017, Mr. Rostami agreed to pay Lucent in weekly installments of $153,000, which Technocel then paid until around July 2017. On around August 2, 2017, Mr. Rostami promised to pay Lucent an increased amount for the weekly installments-- $200,000 instead of $153,000., which Technocel then paid until around November 2017. On or about December 1,

2017, Mr. Rostami informed Lucent that he could increase the weekly installments by an additional $200,000, where the $200,000 would be paid by TYLT in addition to the $200,000 paid by Technocel for the past-due invoices, but the additional $200,000 payment from TYLT occurred only once.

14. On or about November 15, 2017, Ms. Merry Liu, from a company named NewAsiaGroup, which, on information and belief, is an affiliate of Technocel and TYLT and was examining the Lucent power chargers delivered to Technocel in China, sent an e-mail to Lucent, stating: "[p]lease kindly note we will no longer use 'Technocel' as the name of the company[.] Technocel will be changed to 'TYLT[.]'"

15. On or about December 15, 2017, Ms. Christina Valenzuela, on information and belief an employee of both FTC and TYLT, subsequently confirmed NewAsiaGroup's statement that the new name for Technocel would be TYLT. Later, on several occasions, Technocel and TYLT requested Lucent to send invoices to TYLT for purchase orders originally placed under the name of Technocel. Since then, in reliance on these representations, Lucent shipped power chargers to TYLT, and invoiced TYLT for those power chargers.

16. Eventually, on or about January 4, 2018, Mr. Rostami informed Lucent that the amount Technocel owed to Lucent for the power chargers supplied to Technocel would be paid by TYLT in weekly installments of $100K, but only after TYLT had received payment from its customers. Specifically, Mr. Rostami's e-mail stated: "[We] have closed Technocel and it's going through a company that will sell assets and divide between creditors … therefore we [cannot] pay anymore from Technocel, but the company will send payments as soon as they liquidate everything … in the next 90 days." Mr. Rostami's e-mail continued: "[I]n the [meantime], we can pay from TYLT … but since TYLT is new, we can pay $100k per week, until new payments come in from customers. So I have told accounting to pay $100k to Lucent from TYLT in Jan." In the same e-mail, Mr. Rostami

indicated "I've put one of the buildings we have for sale and as soon as I sell it, I can send more payments from TYLT to Lucent. Please let Steve know not to worry, as I promised him, I will pay what is owed on Technocel side to him myself." The "Steve" identified in Mr. Rostami's e-mail is Steve (Chih-Hung) Cheng, President of Lucent.

17. In reliance on Mr. Rostami's e-mail of January 4, 2018, and subsequent correspondence from both Mr. Rostami and Paging Yang, on information and belief, an employee of both TYLT and Technocel, that Lucent's invoices for the supplied power chargers will be paid, Lucent continued shipping power chargers to TYLT in fulfillment of TYLT's purchase orders. TYLT's payment of invoices for TYLT's purchase orders, however, were often made after the 60-day payment term. As a result, in May 2018, Steve Cheng reminded Mr. Rostami of Lucent's 60-day payment term.

18. From late May to early June 2018, Mr. Rostami reassured Lucent that TYLT would be funded by loans. In early June 2018, Mr. Rostami e-mailed Lucent stating "[M]y family has money in Europe and we are trying to transfer some funds from Europe to Steve's daughter this month as well."

19. On July 3, 2018, Ms. Paging Yang, through her Technocel e-mail account, e-mailed Lucent: "[all] payments we did since Dec of 2017 should pay towards TYLT. By US law we cannot touch Technocel's account. What we owe under Technocel is between Rami and Steve by separate agreement in private. … I'll provide a solid payment plan for you for future payments." Ms. Paging Yang also repeatedly requested Lucent to fulfill TYLT's most recent purchase orders of power chargers by July 11, 2018; otherwise, TYLT would lose business or incur a heavy fine.

20. On July 10, 2018, Mr. Rostami confirmed via e-mail he would pay $700,000 from his family funds for the amount Technocel owed to Lucent, and that "[t]he 700k is agreement between Steve and I for pass [sic] due invoices from the

past and does not have do anything with TYLT." While Mr. Rostami promised to pay $700,000 of the remaining amount of past-due invoices to Technocel using his family funds, Mr. Rostami only caused a partial payment of this amount to be made to Lucent, and not from Mr. Rostami, himself, but from TYLT.

21. On or about July 22, 2018, Steve Cheng e-mailed Mr. Rostami again requesting payment for the past-due invoices to Technocel and TYLT. In reply on that same day, Mr. Rostami stated "[t]here will be no further payments, and no more business together." In the same e-mail, Mr. Rostami indicated he had borrowed and paid Lucent over $3.5 million over the year, including $500k two weeks ago. While not having sufficient information regarding Mr. Rostami's borrowing money, Lucent was repeatedly told by Mr. Rostami that he would be responsible for the outstanding balance owed by Technocel and TYLT, as described herein.

22. Because of Mr. Rostami's statements in his July 22, 2018 reply to Steve Cheng, Lucent ceased manufacturing power chargers in fulfillment of six purchase orders from TYLT, and did not ship to TYLT the power chargers that Lucent had already manufactured, which amounts to $1,663,112 in value.

23. As of the filing of this Complaint, TYLT has paid Lucent $3,246,582, of which $2,238,652 was for payment of invoices issued to TYLT, and $1,007,390 was for invoices issued to Technocel. Lucent has still not been paid $2,408,259 for power chargers Lucent supplied and invoiced to Technocel, in addition to $1,663,112 for power chargers Lucent manufactured pursuant to the six purchase orders from TYLT. Because those manufactured power chargers were customized to TYLT's specifications (*e.g*., printing TYLT's logo on the products), Lucent is not able to resell them to any other customers.

24. As of the filing of this Complaint, on information and belief, Technocel has not filed for bankruptcy.

**B.     Allegations related to Alter Ego/Veil Piercing Liability**

25.    On information and belief Mr. Rostami is an officer, director and sole shareholder of both Technocel and TYLT, and Technocel and TYLT have failed to follow and have not observed corporate formalities. Mr. Rostami uses Technocel and TYLT as a mere instrumentality of himself, and commingles funds among Technocel, TYLT and himself. For instance, Mr. Rostami and his employees commingled the commercial transactions and obligations of TYLT and Technocel, by, for example, placing purchase orders to Lucent under the name of Technocel and then requesting Lucent to address its invoices to TYLT; and arbitrarily distributing payments between Lucent's invoices to Technocel and TYLT. Further, Mr. Rostami held himself liable to Lucent for payment of Lucent's invoices to at least Technocel to induce Lucent to continue to fulfill purchase orders issued by Technocel and TYLT by stating he would use his family's funds to satisfy part of the debt. The power chargers supplied by Lucent benefited Mr. Rostami, Technocel and TYLT.

26.    As the sole shareholder of both entities, Mr. Rostami believes he may use Technocel and TYLT's corporate status to avoid liability for Lucent's unpaid invoices to Technocel and TYLT, despite the foregoing and his prior promises that he would be personally liable for and would pay Lucent's invoices to Technocel and TYLT in order to induce Lucent to continue to fulfill purchase orders for power chargers that he sought to sell or already sold to his customers. Thus, a unity of interest and a single enterprise relationship exists among Mr. Rostami, Technocel, and TYLT.

27.    On information and belief, both Technocel and TYLT were and continue to be undercapitalized. Prior to June 2017, Technocel already owed Lucent around $2.672 million and, at least, another power charger supplier, Salcomp PLC ("Salcomp"), in excess of $2.9 million. Within a year after TYLT's formation, TYLT had ordered power chargers from Lucent totaling over $2.238

million.  According to the Delaware Secretary of State Filing, a true and correct copy of which is attached hereto as Exhibit A, TYLT had $5,000 in capital at the time of its formation in July 2017, and, on information and belief, that capitalization remained the same during at least the first year after TYLT's formation.  This capital contribution is insufficient considering, at least the volume of TYLT's purchases and sales, and annual tax assessment.  The Filing shows that TYLT's annual tax assessment for 2018 is $200,000.

28.     During all relevant time periods, Technocel and TYTL shared the same corporate address, 685 Cochran Street.  *See* California Secretary of State Statement for TYLT, a true and correct copy of which is attached hereto as Exhibit B; and California Secretary of State Statement for FTC (Technocel), a true and correct copy of which is attached hereto as Exhibit C.  Further, during all relevant time periods, TYLT and Technocel shared the same employees, who held themselves as employees of both entities, including at least Paging Yang (who managed processing invoices from suppliers), David Yeh (who managed processing purchase orders), and Christina Valenzuela (who managed bookkeeping and accounting).  On information and belief, Merry Liu at NewAsiaGroup also worked for both Technocel and TYLT (beyond her employment with NewAsiaGroup, which, on information and belief, is an affiliate with Technocel, TYLT and Mr. Rostami).

29.     Moreover, Mr. Rostami and employees at TYLT have held themselves out as an alter ego of Technocel, for example, by representing to Lucent that Technocel no longer uses "Technocel" as the name as it will be changed to "TYLT."

30.     During all relevant time periods, Mr. Rostami controlled and managed both Technocel and TYLT, and thus exercised control over the finances and business practices which relate to Lucent's claims herein, and he delayed and prevented payment of Lucent's invoices for power chargers supplied to Technocel

and TYLT. In addition, Mr. Rostami actively participated in corporate affairs of both Technocel and TYLT by communicating with Lucent regarding its invoices to Technocel and TYLT and payment of those invoices.

31. Lucent has performed pursuant to the Contracts of the parties, but Defendants have refused to tender payment of Lucent's unpaid invoices to Technocel and TYLT, and for the power chargers that had been manufactured prior to TYLT's termination of its six purchase orders to Lucent.

32. On information and belief, Mr. Rostami has fraudulently transferred substantially all of Technocel's assets to TYLT through third-party Insolvency Services Group ("ISG") under a General Assignment. On information and belief, Technocel and TYLT were, at all times controlled and managed by the same shareholder, Mr. Rostami, who caused Technocel to transfer most of its assets to TYLT to maintain TYLT's business operations.

33. On information and belief, Mr. Rostami, without regard to the interests of Technocel and its creditors, and at a time when Technocel was insolvent, transferred its assets to TYLT so he could remain in the business. Mr. Rostami's manipulations of the affairs of the corporations were designed to foster his own purposes and operated to the disadvantage of Technocel and its creditors.

34. On information and belief, Mr. Rostami formed TYLT in June 2017 as a vehicle to avoid liabilities incurred by Technocel, so that he could continue in the business of distributing power chargers. As stated above, Technocel already accumulated over five million on unpaid invoices to at least Salcomp and Lucent.

35. In early January 2018, Mr. Rostami informed Lucent that he was closing (or winding down) Technocel. On January 9, 2018, Technocel transferred substantially all its assets to ISG as the assignee - under a General Assignment effectuating an assignment for the benefit of creditors as defined in Section 493.010 of the California Code of Civil Procedure and under California common law.

(2:17-cv-07807 (D.E. 34, 1:1-24).) Not long after the assignment, ISG effected a sale of Technocel's assets to TYLT. (*Id*. (D.E. 55, 2:12-16).)

36. On information and belief, the transfer of Technocel's assets to TYLT was done to escape liability resulting from Technocel's operations, and results in an inequity should Technocel's corporate veil not be pierced to impose liability on its shareholders, including at least Mr. Rostami.

37. By virtue of Mr. Rostami's exercise of complete control of Technocel and TYLT's business practices and finances, and his use of undercapitalized Technocel and TYLT as a mere instrumentality to avoid making payments owed to Lucent, Mr. Rostami, who owns and controls Technocel and TYLT, should be held jointly and severally liable for any obligations of Technocel and TYLT to Lucent through the doctrines of alter ego and/or single enterprise liability and piercing the corporate veil.

## COUNT I
### (Breach of Contract)

38. Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

39. From January 2017 to May 2018, Defendants issued a total of 77 purchase orders to Lucent, which were all accepted by Lucent. This resulted in valid and enforceable Contracts between Lucent and Defendants, for good and valuable consideration.

40. Lucent performed its obligations under the Contracts, except those conditions, covenants and obligations excused by Defendants' breach.

41. Defendants materially breached their obligations under the Contracts by failing to pay Lucent for the power chargers Defendants received and/or ordered.

42. As a direct and proximate result of Defendants' breach, Lucent has been damaged and continues to suffer damages.

43. There is due and owing from Defendants to Lucent the principle sum of not less than $4,506,381, representing the contract price of the power chargers Defendants ordered.

44. Lucent is entitled to interest on the foregoing amount and to such additional sums to be determined at trial as Lucent may be required to incur as a proximate cause of Defendants' breach.

## COUNT II
### (Anticipatory Breach)

45. Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

46. Between on or about March 20, 2018 to on or about May 16, 2018, TYLT issued a total of six purchase orders to Lucent, which were all accepted by Lucent. This resulted in valid and enforceable Contracts between Lucent and Defendants, for good and valuable consideration.

47. Lucent manufactured all of the ordered chargers, but on or about July 23, 2018, Mr. Rostami through TYLT and Technocel manifested an unequivocal intention to breach the parties' Contracts.

48. Defendants' repudiation of their obligations under the Contracts constitutes an anticipatory breach.

49. This threatened future breach has caused Lucent substantial damages in the principle sum of not less than $1,663,112, representing the contract price of the power chargers Defendants ordered.

50. Lucent is entitled to interest on the foregoing amount and to such additional sums to be determined at trial as Lucent may be required to incur as a proximate cause of Defendants' anticipatory breach.

## COUNT III
### (Promissory Estoppel)

51. Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

52. From January 2017 to May 2018, Defendants issued a total of 77 purchase orders to Lucent, representing that if Lucent shipped the power chargers to Defendants, Defendants would render payment for such products within 60 days after delivery. Defendants further agreed to a payment plan for past due invoices on shipments already made.

53. In so representing, Defendants knew or should have known that Lucent would be reasonably induced to rely upon those representations and expend significant time and resources to deliver the goods to Defendants.

54. Lucent did rely on the above representations to its detriment, and manufactured and shipped power chargers of $2,408,289 in value. Having received and accepted the goods, Defendants failed to pay for them.

55. Lucent also relied on Defendants' representations to its detriment, and manufactured power chargers of $1,663,112 in value. Because these power chargers were customized pursuant to Defendants' specifications (printing their logo on the products), Lucent is not able to re-sell them to others to mitigate its damages.

56. As a direct and proximate cause of Technocel's conduct, Lucent has been damaged and continues to suffer damages in an amount of at least $4,506,381.

57. Injustice can be avoided only by enforcing Defendants' promise to pay for all of the power chargers shipped to, and accepted by, Defendants, and enforcing TYLT's promise to purchase the remaining power chargers at the agreed upon price.

## COUNT IV
### (Unjust Enrichment)

58. Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

59. At Defendants' request, Lucent manufactured and delivered power chargers of $2,408,289 in value to Defendants, which Lucent accepted, and manufactured to fulfill Defendants' orders.

60. On information and belief, Defendants resold the shipped power chargers to its customers, and received payment from those customers.

61. Defendants have not paid Lucent for the power chargers it has manufactured, including those already shipped to and received by Technocel, despite repeated requests for payment and efforts that established a payment plan.

62. Defendants have been unjustly enriched by the power chargers Lucent manufactured and shipped to Defendants, for which Defendants did not pay.

63. As a direct and proximate cause of Defendants' conduct, Defendants have been unjustly enriched and Lucent harmed in an amount to be proven at trial.

## COUNT V
### (Fraudulent Misrepresentation & Inducement)

64. Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

65. As described herein, Defendants ordered from Lucent the power chargers of $4,506,381 in value, and agreed to pay this amount.

66. Defendants made false representations of material facts and/or concealed material facts in connection with the order and/or acceptance of the power chargers, including, among others:

- Repeatedly misrepresenting that Technocel and TYLT would pay for the power chargers within sixty days of delivery when they had no intent to do so;

- Repeatedly requesting that Lucent continue shipping products while suppressing the fact that Defendants had no intention of paying for them;
- Misrepresenting material facts that Technocel was going through bankruptcy while no bankruptcy was filed for Technocel.
- Concealing material facts from Lucent that TYLT was formed as a vehicle to avoid Technocel's liabilities to pay Lucent;
- Misrepresenting that Technocel had no assets to pay Lucent's invoices while concealing Technocel's fraudulent transfer of its assets to TYLT;
- Repeatedly misrepresenting that Technocel and TYLT would make payments for the power chargers according to an agreed payment plan when in fact neither intended to do so; and
- Misrepresenting that Mr. Rostami would personally make a payment of $700,000 towards Lucent's invoices to Technocel from his family's funds when he had no intention to do so.

67. On information and belief, Defendants knew these misrepresentations, omissions, and concealment of material facts were false, or at a minimum, acted recklessly as to the truth or falsity of the representations.

68. On information and belief, Defendants intentionally or recklessly made the misrepresentations, omissions, and concealment for the purpose of inducing Lucent to continue manufacturing and shipping power chargers to Defendants, and to purposefully delay making payments to Lucent.

69. On information and belief, Defendants intended for Lucent to rely on the misrepresentations, omissions, and concealment.

70. Lucent reasonably and justifiably relied to its detriment on Defendants' misrepresentations, omissions, and concealment, by, for example, continuing manufacture and shipping of the power chargers to Defendants.

71. As a direct and proximate result of the fraudulent inducement and misrepresentations, omissions, and concealment described herein, Lucent has

COMPLAINT FOR BREACH OF CONTRACT  -14-

suffered, and will continue to suffer, irreparable harm and injury including, but not limited to, substantial losses in revenue, loss of profits, discredit to its business reputation and loss of goodwill, loss of business relations with existing and future business prospects and loss of competitive business advantage, opportunity and/or expectancy.

72. In the alternative, and/or in addition to the irreparable injury described herein, as a direct and proximate result of the conduct described above, Lucent has suffered and will continue to suffer damages in an amount to be proven at trial, and is entitled to recover these damages from Defendants.

73. Further, to the extent Defendants' actions were done knowingly, intentionally, willfully, wantonly, maliciously and/or recklessly, Lucent is entitled to an award of exemplary or punitive damages.

## COUNT VI
### (Negligent Misrepresentation)

74. Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

75. On information and belief, Defendants intended for Lucent to rely on the misrepresentation, omissions, and concealment.

76. Lucent reasonably and justifiably relied to its detriment on the misrepresentations, omissions, and concealment of Defendants. As a direct and proximate result of Defendants' representations, omissions, and concealment described herein, Lucent has suffered, and will continue to suffer, irreparable harm and injury including, but not limited to, substantial losses in revenue, loss of profits, discredit to its business reputation and loss of goodwill, loss of business relations with existing and future business prospects and loss of competitive business advantage, opportunity and/or expectancy.

77. In the alternative, and/or in addition to the irreparable injury described herein, as a direct and proximate result of the conduct described above, Lucent has

suffered and sill continues to suffer damages in an amount to be proven at trial, and is entitled to recover these damages from Defendants.

## COUNT VII
**(Fraudulent Transfer under Civil Code section 3439.02, 3439.04 & 3439.05)**

78. Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

79. On the dates on which Technocel transferred assets to TYLT through ISG, Technocel was insolvent as defined by Civil Code section 3439.02(a) in that the total of Technocel's outstanding, matured debt obligations had, for several months, far exceeded its assets.

80. Technocel transferred assets to TYLT through ISG without receiving a reasonably equivalent value in exchange for the transfer or obligation, and that TYLT was engaged in a business for which its remaining assets were unreasonably small in relation to the business or transaction.

81. In making the foregoing transfers, Defendants had the actual intent to hinder, delay, or defraud Lucent from collecting on its lawful debts, as prescribed under Civil Code section 3439.04. Mr. Rostami through TYLT effectively retained possession or control of the property transferred after the transfer.

82. At all times mentioned herein, Defendants knew that Lucent's claim could only be satisfied, *albeit* partially, out of the funds and assets Technocel transferred away. Notwithstanding this knowledge, Defendants intentionally, willfully, fraudulently and maliciously did things alleged herein to defraud and oppress Lucent.

83. As a direct and proximate result of the wrongful acts herein alleged, Lucent has been damaged in that Technocel was emptied of assets to attach.

84. Lucent is entitled to void all the money and asset transfers made by Technocel to TYLT under at least Civil Code section 3439.04 and 3439.05, and Lucent is entitled to exemplary and punitive damages.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in its favor and against Defendants as follows:

1. That Mr. Rostami and TYLT are alter egos of Technocel, and that Mr. Rostami, TYLT and Does 1-10 are liable for Technocel's and TYLT's acts and omissions and thus all of the claims asserted against Technocel herein;

2. That Mr. Rostami is alter ego of TYLT, and that Mr. Rostami and Does 1-10 are liable for TYLT's acts and omissions and thus all of the claims asserted against TYLT herein;

3. That Defendants have breached the Contracts as pled in Count I;

4. That Defendants have anticipatorily breached the Contracts as pled in Count II;

5. That Defendants be liable for promissory estoppel as pled in Count III;

6. That Defendants have been unjustly enriched as pled in Count IV;

7. That Defendants have fraudulently misrepresented and induced Lucent as pled in Count V;

8. That Defendants have negligently misrepresented to Lucent as pled in Count VI;

9. That Defendants have fraudulently transferred Technocel's assets to TYLT as pled in Count VII;

10. That Lucent be awarded all damages incurred by Lucent, including but not limited to $4,506,381 because of Defendants' activities and conduct alleged herein in connection with this action;

11. That Lucent be awarded exemplary and punitive damages;

12. That Lucent be awarded pre-judgment and post-judgment interest on all damages award;

13. That Lucent be awarded costs and reasonable attorneys' fees incurred in connection with this action;

14. That the money and asset transfers from Technocel to TYLT be set aside; and that Lucent recover all interests and profits derived from such transfers, as ill-gotten gains;

15. That Mr. Rostami, TYLT, and Does 1-10 be preliminarily and permanently enjoined from further disposing or dissipating any of the moneys and assets transferred to them from Technocel;

16. That Lucent be awarded a full accounting of the damages above, including for past damages and any continuing or future damages; and

17. That Lucent be awarded such other and further relief as the court may deem just and proper.

DATED:  October 8, 2018            **PERKINS COIE LLP**

By: */s/ John P. Schnurer*
John P. Schnurer, Bar No. 185725
JSchnurer@perkinscoie.com
Yun (Louise) Lu, Bar No. 253114
LLu@perkinscoie.com

Attorneys for Plaintiff
LUCENT ELECTRONIC CO., INC.

COMPLAINT FOR BREACH OF CONTRACT   -18-