John P. Schnurer, Bar No. 185725
JSchnurer@perkinscoie.com
Yun (Louise) Lu, Bar No. 253114
LLu@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA  92130-2594
Telephone:  858.720.5700
Facsimile:  858.720.5799

Attorneys for Plaintiff
LUCENT ELECTRONIC CO., LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCENT TRANS ELECTRONIC CO., INC.<br><br>Plaintiff,<br><br>v.<br><br>FOREIGN TRADE CORPORATION D/B/A TECHNOCEL, TYLT INC., RAMIN ROSTAMI, ADVANCED WIRELESS INNOVATIONS, LLC and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:18-cv-08638-FMO-KS<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) FRAUDULENT MISREPRESENTATION/ INDUCEMENT**<br><br>**(2) NEGLIGENT MISREPRESENTATION**<br><br>**(3) BREACH OF CONTRACT**<br><br>**(4) ANTICIPATORY BREACH**<br><br>**(5) PROMISSORY ESTOPPEL**<br><br>**(6) UNJUST ENRICHMENT**<br><br>**(7) FRAUDULENT TRANSFER** |

Plaintiff Lucent Trans Electronic Co., Inc. ("Lucent"), a Taiwan corporation, for its Complaint against Foreign Trade Corporation d/b/a Technocel ("Technocel"), TYLT Inc. ("TYLT"), Ramin Rostami ("Rostami"), Advanced Wireless Innovations, LLC ("AWI") and DOES 1 through 10 (collectively, "Defendants"), respectfully submits the following and alleges as follows:

## NATURE OF THIS ACTION

1.      This action seeks money damages against Defendants Rostami, and his *alter egos* Technocel, TYLT and AWI, who acted as a single enterprise, to defraud Lucent to manufacture and supply power chargers to Defendants, but wrongly did not pay for those power chargers ordered and/or received from Lucent.  On the heels of Technocel's insolvency, Rostami caused Technocel to fraudulently transfer its assets to TYLT, to escape Technocel's liabilities of millions of dollars and continue his fraudulent business practices, as stated herein.  The fraudulent transfer did not end with TYLT.  Shortly after refusing to pay TYLT's past-dues to Lucent, Rostami caused TYLT to assign all of its trademark rights fraudulently transferred from Technocel to another company he owns and controls - AWI.

2.      Lucent seeks recovery of amounts owed for those chargers, and, herein asserts causes of action for fraudulent transfer, fraudulent inducement, fraudulent and negligent misrepresentation, breach of contract, anticipatory breach, promissory estoppel, and unjust enrichment.  Some of these claims against some of the Defendants are based on *alter-ego* liability and piercing the corporate veil.

3.      Lucent also seeks to recover litigation costs, investigative costs, pre-judgment and post-judgment interests, attorneys' fees where applicable, and punitive damages from Defendants.  Lucent further seeks recovery of assets and money fraudulently transferred from Technocel to TYLT and then AWI under the guise of a general assignment for the benefit of creditors under at least California Civil Code §§ 3439.02, 3439.04 & 3439.05 ("GABC"), and a preliminary and

1   permanent injunction against Rostami and TYLT from disposing or dissipating any
2   of the funds fraudulently transferred, or otherwise acquired, from Technocel.

3   ### PARTIES

4       4.      Plaintiff Lucent is incorporated under the laws of Republic of China,
5   Taiwan, with its principal place of business in 9F-1, No. 16, Chien Pah Road,
6   Chung Ho District, New Taipei City, Taiwan.  Lucent manufactures cellular phone
7   accessories and computer peripherals, including power chargers.  Founded in 1990,
8   Lucent has nearly thirty years of experience and know-how in switching power
9   supply, power chargers, multimedia, IP Camera and computer peripherals.  Lucent
10  sells power chargers worldwide, including North and South Americas, Europe,
11  Russia, the Middle East and Asia.

12      5.      Defendant Rostami is a California resident and is the founder of both
13  Defendant Technocel and Defendant TYLT.  Between at least 2016 and January
14  2018 (when Technocel went through the GABC process), Rostami held executive
15  positions at Technocel including Chief Executive Officer ("CEO") and Chief
16  Financial Officer ("CFO), while his wife, Fariba Rostami, on information and
17  belief, was Secretary of the company.  On information and belief, Rostami had been
18  the sole or dominant board member and sole shareholder of Technocel.  On
19  information and belief, Rostami founded TYLT and has been the sole or dominant
20  board member and sole shareholder, while also employed as CEO of TYLT since
21  its incorporation.  In addition, Rostami held himself personally liable for the
22  amount Technocel owes Lucent for the power chargers supplied to Technocel, as he
23  should, given he is Technocel's *alter ego*.  Rostami's capital contribution to TYLT
24  is $5,000, which is inadequate as described herein.  On information and belief, and
25  as stated herein, Rostami is also TYLT's *alter ego*.

26      6.      Defendant Technocel was founded and incorporated by Rostami as a
27  California corporation, which had its principal place of business at 685 Cochran
28  Street, Suite 200, Simi Valley, California.  Technocel was an international

distributor of wireless accessories, including power chargers.  Specifically, Technocel engaged in the business of purchasing power chargers from suppliers and reselling those power chargers to retail merchandizers.  As stated herein, between 2016 and January 2018, Technocel was controlled by Rostami, as the sole or dominant board member and sole shareholder, while also employed as CEO and CFO of Technocel.  On information and belief, Technocel is Rostami's *alter ego*.

7.     Defendant TYLT is a Delaware corporation and was founded by Rostami and incorporated on June 7, 2017.  As stated herein, on information and belief, Rostami has been the sole or dominant board member and sole shareholder, while also employed as CEO of TYLT since his incorporation of TYLT.  On information and belief, TYLT is undercapitalized, because Rostami, as the sole shareholder of TYLT, contributed only $5,000 as its operating capital.  While Technocel was still an on-going business entity, TYLT and Technocel shared the same principal place of business—685 Cochran Street, Suite 200, Simi Valley, California—and during which TYLT held itself out as another name for Technocel.  TYLT was and still is an international distributor of wireless accessories including power chargers.  On information and belief, Rostami formed TYLT so that he could carry out his plan to defraud Lucent and other creditors of Technocel and continue his business as an international distributor of wireless accessories including power chargers under the new name TYLT by acquiring most, if not all, assets of Technocel at below market value under the guise of the GABC process.  On information and belief, TYLT is Rostami's and Technocel's *alter ego*.

8.     Defendant AWI is a Delaware corporation and was founded by Rostami and incorporated on February 3, 2016.  On information and belief, Rostami has been the sole or dominant board member and sole shareholder, while also employed as CEO of AWI since his incorporation of AWI.  AWI shares the same principal place of business with TYLT and Technocel (while it was still operating)—685 Cochran Street, Suite 200, Simi Valley, California.  On

information and belief, like Technocel and TYLT, AWI is also in the business of retailing wireless accessories including power chargers, and has been controlled by Rostami since its incorporation by him.  On August 1, 2018, merely ten days after Rostami repudiated to pay Technocel's and TYLT's past-dues to Lucent, Rostami caused TYLT to assign the trademark rights of Technocel that were transferred to TYLT on January 8, 2018, to AWI for no value in return.  On information and belief, TYLT's trademark assignment to AWI was to avoid TYLT's and Technocel's liabilities to Lucent.  On information and belief, AWI is under Rostami's sole control and is Defendants Rostami's, Technocel's and TYLT's *alter ego*.

9.     Lucent does not know the true names and capacities of the defendants sued as DOES 1 through 10, inclusive, and, therefore, sues these defendants by such fictitious names.  Lucent will amend this Complaint to allege the true names and capacities of DOES 1 through 10, inclusive, when ascertained.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     Venue is proper under 28 U.S.C. § 1391(b)(1) as all Defendants reside in this judicial District.  Venue is also proper pursuant to 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

**A.     Defendants' Contracts and Transactions with Lucent**

12.     Starting in April 1999 and continuing through at least November 2017, Rostami, through his company Technocel, entered into a series of contracts ("Contracts") with Lucent and engaged in a course of practice where Rostami would have Technocel issue purchase orders to Lucent for power chargers, Lucent

would manufacture and supply those power chargers pursuant to the terms specified in Technocel's purchase orders, and Lucent would then submit invoices to Technocel for those power chargers, which included a payment term as net 60 days after the invoice issuance.  Until around July 2016, Mr. Rostami through Technocel would pay the invoiced amount pursuant to the payment term of invoices delivered to Technocel for the supplied power chargers.

13.    Beginning on or about August 2016, Rostami, as the sole or dominant board member, and both the CEO and the CFO, caused Technocel to not pay the invoiced amount pursuant to the payment term of the invoices delivered to Technocel.  At this time, to induce Lucent to continue shipping power chargers to Technocel, Rostami began making promises to pay Lucent the amount owed to Lucent in installments.  For example, on around February 15, 2017, shortly after Rostami's first failure to pay Lucent's invoice in accord with the 60-day payment term, he agreed to pay Lucent in weekly installments of $153,000, which Technocel then paid until around July 2017.  The installment plan, however, resulted in the payment for only a portion of the supplied power chargers given Rostami continued to issue purchase orders from Technocel for power chargers that were subsequently supplied by Lucent, but Rostami failed to pay the invoices for those power chargers.  By May 2017, the past-due invoices owed to Lucent amounted to $2,672,057.

14.    To induce Lucent to continue supplying power chargers to Technocel given the millions of dollars debt, Mr. Rostami agreed on around August 2, 2017 to pay Lucent an increased amount for the weekly installments -- $200,000 instead of $153,000 as originally promised.  Subsequently, Mr. Rostami had Technocel pay the weekly installment of $200,000 from early August until around November 2017.  But during this time, Mr. Rostami, on information and belief, was preparing his exit plan to default on the past-due invoices to Lucent.  Unbeknownst to Lucent, Mr. Rostami had mis-managed, and otherwise ran, Technocel into the ground,

which, in part, resulted in Technocel having amassed $2.672 million in debt to Lucent, and millions in other debt to other suppliers, including at least $2.9 million in debt to Salcomp PLC ("Salcomp"), totaling $5.572 million in debt. Also unbeknownst to Lucent, before promising Lucent the $200,000 weekly installments, Mr. Rostami already formed another company, TYLT Inc. ("TYLT") in around June 2017 to perpetuate his fraudulent business practice by avoiding liabilities occurred by Technocel to Lucent and Salcomp.

15.     On information and belief, Mr. Rostami's installment plan was a scheme to procure even more power chargers from Lucent than he planned or was able to pay for. Between June to November 2017, Mr. Rostami, through Technocel, continued ordering power chargers from Lucent totaling around $5.786 million in value, which Lucent timely delivered to Technocel and subsequently invoiced Technocel for that amount. But despite Technocel's weekly installment payments to Lucent during this period, the amount Technocel owed to Lucent did not decrease, but increased to nearly $4.5 million by end of November 2017.

16.     On information and belief, unbeknownst to Lucent, Rostami was in the middle of winding up Technocel's operations and transferring Technocel's assets to TYLT through a GABC proceeding in around November 2017. At the time, Rostami and Technocel concealed this GABC proceeding rom Lucent, and, on information and belief, also failed to disclose at least Lucent as a creditor to Insolvency Services Group ("ISG"), the party overseeing the GABC proceeding.

17.     On or around December 1, 2017, Rostami told Lucent that he could increase the weekly payments by an additional $200,000, where he would have TYLT pay this additional $200,000 weekly while Technocel would pay the other $200,000 weekly to pay-down Lucent's past-due invoices. Rostami had TYLT make additional $200,000 payment to Lucent once.

18.     Between around November 2017 to January 2018, Rostami, his employees at both Technocel and TYLT, and his affiliates repeatedly delivered a

message to Lucent that that ***TYLT and Technocel were the same entity, and TYLT was merely another name of Technocel***.  For example, on or about November 15, 2017, Ms. Merry Liu, from a company named NewAsiaGroup, which, on information and belief, is an affiliate of Technocel and TYLT and was examining the Lucent power chargers delivered to Technocel in China, sent an e-mail to Lucent, stating: "[p]lease kindly note we will no longer use 'Technocel' as the name of the company[.]  Technocel will be changed to 'TYLT[.]'"  On or about December 15, 2017, Ms. Christina Valenzuela, on information and belief an employee of both Technocel and TYLT, subsequently confirmed NewAsiaGroup's statement ***that the new name for Technocel would be TYLT***.  Later, on several occasions, Technocel and TYLT requested Lucent to send invoices to TYLT for purchase orders originally placed under the name of Technocel.  Since then, in reliance on these representations, Lucent shipped power chargers to TYLT, and invoiced TYLT for those power chargers ordered by Technocel.

19.    To further delay Lucent's discovery of Rostami's fraudulent practice and induce its continued supply of power chargers, on or about January 4, 2018, Rostami informed Lucent that the amount Technocel owed to Lucent for the power chargers supplied to Technocel would be paid by TYLT in weekly installments of $100K, but only after TYLT had received payment from its customers.  Specifically, Rostami's e-mail stated: "[We] have closed Technocel and it's going through a company that will sell assets and divide between creditors … therefore we [cannot] pay anymore from Technocel, but the company will send payments as soon as they liquidate everything … in the next 90 days."  This e-mail continued: "[I]n the [meantime], we can pay from TYLT … but since TYLT is new, we can pay $100k per week, until new payments come in from customers.  So I have told accounting to pay $100k to Lucent from TYLT in Jan."

20.    In the same January 4, 2018 e-mail, Rostami offered a ***personalized guarantee*** for the money he owed: "I've put one of the buildings we have for sale

and as soon as I sell it, I can send more payments from TYLT to Lucent.  Please let Steve know not to worry, as I promised him, I will pay what is owed on Technocel side to him myself."  The "Steve" identified in Mr. Rostami's e-mail is Steve (Chih-Hung) Cheng, President of Lucent.  On information and belief, Rostami's promises to pay Technocel's debt with his personal assets were intended to delay Lucent's pursuit of Technocel's debt and induce Lucent's continued supply of power chargers.

21.     Rostami's plan prior to this time, on information and belief, was to continue the distribution business he had under Technocel's name under the "new name" TYLT without TYLT being saddled with the significant debt he incurred on behalf of Technocel by fraudulently transferring Technocel's assets to TYLT at below market value to the detriment of Lucent and other creditors, as stated herein. In fact, Rostami has attempted to white-wash this fraudulent transfer through a seemingly legitimate process and services of ISG, the party selected by Rostami to oversee the GABC proceeding to wind up Technocel.  Attached hereto as Exhibit A is a true and correct copy of the General Assignment Agreement between Technocel and ISG, and the corresponding trademark assignment cover sheet.  On information and belief, as required by the GABC process under California Civil Code Section 1802(c), Rostami had Technocel submit a list of Technocel's creditors to ISG.  However, on information and belief, this submission to ISG intentionally failed to disclose at least Lucent as one of Technocel's creditors.  On information and belief, ISG did not provide a notice to Lucent and other creditors of Technocel under Section 1802(a) as they had not been identified by Rostami and Technocel.  The lack of notice to Lucent and the other creditors had limited the likely pool of potential buyers who participated in the sale of Technocel's assets to only those knowing of the potential sale - on information and belief, Rostami, the insider, using TYLT to acquire the underlying assets of Technocel.  In fact, on the same day of the General Assignment (January 8, 2018), ISG and TYLT executed an

Intellectual Property Assignment Agreement, where ISG assigned all of Technocel's patent and trademark rights to TYLT for no value in return.  Attached hereto as Exhibit B is a true and correct copy of the Intellectual Property Assignment Agreement between ISG and TYLT and the corresponding trademark assignment cover sheet.

22.     As such, at least Lucent (and any other undisclosed creditor of Technocel) was materially harmed by not being able to participate in the distribution of any funds to creditors identified to ISG during the GABC proceeding.  Further, because of Rostami's fraudulent conduct, Lucent was denied the opportunity to ensure that Technocel's assets were sold on fair terms, let alone to participate as a potential buyer of those assets.  To perpetuate his fraudulent scheme, on information and belief, Rostami concealed his interest in TYLT from ISG and acquired most, if not all, of Technocel's assets through TYLT for an insignificant, below market value.

23.     Lucent reasonably relied on Rostami's representations that he would pay for the past-due invoices issued to Technocel through TYLT and use of his personal funds.  As a result, Lucent continued to supply power chargers for Rostami's distribution business, now named TYLT instead of Technocel believing the former to be a continuation of Technocel as told by Rostami and employees of both Technocel and TYLT.  Indeed, the correspondence between Lucent and TYLT consistently copied employees working for both Technocel and TYLT, reinforcing Lucent's reasonable belief that TYLT and Technocel were the same entity.  For example, while discussing TYLT's purchase orders and payment to Lucent, the e-mail account of Technocel's accounting person, Ms. Valenzuela, was consistently copied on the correspondence.

24.     Unbeknownst to Lucent, Rostami's January 4, 2018 e-mail regarding Technocel's winding up was intended to delay Lucent's pursuit of its rights against Technocel's assets.  Lucent reasonably relied on Rostami's representations and

waited for 90 days.  But Lucent never heard from Rostami, much less received any funds from Technocel's liquidation, as stated in Rostami's January 4, 2018 e-mail.

25.     Subsequent to Rostami's January 4, 2018 e-mail, Rostami and Ms. Paging Yang (on information and belief, an employee of both TYLT and Technocel) sent numerous e-mails to Lucent to reassure Lucent that Technocel's past-due invoices for the supplied power chargers will be paid by TYLT.  On information and belief, Rostami intended for Lucent to rely on such promises so that Lucent would continue to fulfill TYLT's purchase orders.  On information and belief, Rostami also intended for Lucent to rely on his promises that he and TYLT would pay for Technocel's past-due invoices to induce Lucent to delay pursuing Technocel for Lucent's past-due invoices issued to Technocel.

26.     Lucent reasonably relied on Rostami's and Ms. Yang's representations, and continued shipping power chargers to TYLT in fulfillment of TYLT's purchase orders.  TYLT's payment of invoices for TYLT's purchase orders, however, were often made after the 60-day payment term, and TYLT failed to pay for Technocel's past-due invoices as promised to Lucent.  As a result, in May 2018, Steve Cheng reminded Rostami of invoice's 60-day payment term.

27.     From late May to early June 2018, Rostami reassured Lucent on numerous occasions that TYLT would be funded by loans.  In response to Lucent's requests for payment, in early June 2018, Rostami again reassured Lucent with his *personal assets*, stating "[M]y family has money in Europe and we are trying to transfer some funds from Europe to Steve's daughter this month as well."  On information and belief, Rostami's promise to pay Technocel's debt with his family funds was intended to at least induce Lucent's continued supply of power chargers.

28.     By July 2018, on information and belief, the GABC proceeding accomplished what Rostami had intended, the sale of most, if not all, of Technocel's assets to TYLT, and below market value, at which point Rostami and TYLT had benefited from Lucent's continued supply of power chargers for more

than half a year without fulfilling their promises to pay Technocel's debt to Lucent. On or about July 3, 2018, Ms. Paging Yang e-mailed Lucent using her **Technocel** e-mail account stating that all payments Lucent received since December 2017 for its past-due invoices should have been towards Lucent's invoices issued to TYLT contrary to her prior assertion that TYLT would also pay for and had been paying for Lucent's invoices issued to Technocel.  Ms. Paging Yang's e-mail states, in pertinent part:  "[All] payments we did since Dec of 2017 should pay towards TYLT.  By US law we cannot touch Technocel's account.  What we owe under Technocel is between Rami and Steve by separate agreement in private. … I'll provide a solid payment plan for you for future payments."  In pressing Lucent to continue supplying power chargers to TYLT, Ms. Paging Yang also repeatedly requested Lucent to fulfill TYLT's most recent purchase orders of power chargers by July 11, 2018.  Otherwise, she claimed TYLT would allegedly lose business or incur a heavy fine.  In her correspondence with Lucent regarding TYLT's purchase orders and payment dues, Ms. Yang consistently used her **Technocel** e-mail account.

29.     On July 10, 2018, Rostami confirmed via e-mail he would pay $700,000 from his family funds for the amount Technocel owed to Lucent.  Since Rostami had successfully induced Lucent to supply power chargers for his distribution business throughout the pendency of the GABC proceeding, at the conclusion of which resulted in the sale of most, if not all, of Technocel's assets to TYLT at below market value (to the detriment of Lucent and other creditors), he no longer had to carry on his charade of lies and false promises as they related to TYLT:  "[t]he 700k is agreement between Steve and I for pass [sic] due invoices from the past and does not have do anything with TYLT."  While Rostami promised to pay $700,000 of the remaining amount of past-due invoices to Technocel using his family funds, Rostami only caused a partial payment of this amount to be made to Lucent.  And, despite his assertions in his July 20, 2018 e-

mail, this partial payment of the promised $700,000 was made **by TYLT**.  On information and belief, Rostami commingled his personal funds with TYLT's funds in order to make this partial payment.

30.    On or about July 22, 2018, Steve Cheng e-mailed Rostami again requesting payment for Lucent's past-due invoices to Technocel and TYLT.  In reply on that same day, Rostami stated "[t]here will be no further payments, and no more business together."  In the same e-mail, Rostami indicated ***he had borrowed and paid Lucent over $3.5 million*** over the year, including $500k two weeks ago.  On information and belief, Rostami's July 22, 2018 e-mail is another instance that confirms Rostami's commingling of his personal funds with the funds of both Technocel and TYLT.  While having insufficient information regarding Mr. Rostami's borrowing money, Lucent was repeatedly told by Rostami, verbally or in writing, that he would be ***personally*** responsible for the outstanding balance owed by Technocel and TYLT, as described herein.

31.    In reasonable reliance on Rostami's statements in his July 22, 2018 reply e-mail to Steve Cheng, Lucent ceased manufacturing power chargers in fulfillment of six purchase orders from TYLT, and did not ship to TYLT the power chargers that Lucent had already manufactured, which amounts to $1,663,112 in value.

32.    As of the filing of this Complaint, TYLT has paid Lucent $3,246,582, of which $2,238,652 was for payment of invoices issued to TYLT, and $1,007,390 was for invoices issued to ***Technocel***.  Lucent has still not been paid $2,408,259 for power chargers Lucent supplied and invoiced to Technocel, in addition to $1,663,112 for power chargers Lucent manufactured pursuant to the six purchase orders from TYLT.  Because those manufactured power chargers were customized to TYLT's specifications (*e.g*., printing TYLT's logo on the products), Lucent is not able to resell them to any other customers.

33.     On August 1, 2018, Rostami, through "Intellectual Property Assignment Agreement" executed by himself on behalf of both TYLT and AWI (a true and correct copy of which along with the corresponding trademark assignment cover sheet is attached hereto as Exhibit C), assigned from TYLT to AWI, for no or an insignificant value, all titles and rights of the trademarks Technocel fraudulently transferred to TYLT on January 8, 2018.  On information and belief, AWI is undercapitalized and is under sole control of Defendant Rostami, and is Defendants Rostami's, Technocel's and TYLT's *alter ego*.

**B.     Additional Allegations related to Alter Ego/Veil Piercing Liability**

34.     On information and belief, Rostami undercapitalized Technocel, TYLT, and AWI, and used those entities to perpetuate his fraud on Lucent and other suppliers and creditors.  On information and belief, Technocel did not have sufficient capital to operate a distribution business involving power chargers, which involved millions of dollars in cash flow.  Prior to June 2017, Technocel already owed Lucent around $2.672 million and, at least, another power charger supplier, Salcomp PLC ("Salcomp"), in excess of $2.9 million.

35.     Similarly, between December 2017 to July 2018, TYLT had received power chargers from Lucent alone totaling over $2.238 million, which was nearly $280,000 a month at average.  On information and belief, TYLT sold those power chargers at a price significantly higher than the purchase price from Lucent, and thus TYLT's revenues should amount to at least *a million per month*.  Yet, according to the Delaware Secretary of State Filing (a true and correct copy of which is attached hereto as Exhibit D), however, TYLT had only ***$5,000 in capital*** at the time of its formation in July 2017, and arguably the funds available to acquire most, if not all, of the assets of Technocel through the GABC proceeding at a value significantly below their fair value.  On information and belief, TYLT's capital contribution was insufficient considering, at least the volume of TYLT's purchases and sales, and annual tax assessment.  By way of example, the Filing shows that

TYLT's annual tax assessment for 2018 is $200,000.  On information and belief, that capitalization remained insufficient at least the first year after TYLT's formation, the period during which TYLT continued ordering and receiving power chargers from Lucent.  Similar to Technocel and TYLT, on information and belief, as sole shareholder of AWI, Rostami provided AWI inadequate capital to perpetuate his fraudulent scheme.  At least in part because it was undercapitalized, AWI paid no value to TYLT for receiving through assignment all titles and rights of the trademarks Technocel earlier fraudulently transferred to TYLT.

36.   At all these times relevant to Lucent's claims herein, on information and belief, Rostami exercised full control over TYLT, Technocel and AWI as being an officer (CEO of TYLT, Technocel and AWI, and also CFO of Technocel), sole or dominant board member and sole shareholder of all entities.  On information and belief, Technocel, TYLT and AWI failed to follow and observe corporate formalities.  For example, on information and belief, none of these entities timely filed the annual report with the government as required by the statutes.  As another example, as stated herein, Rostami repeatedly commingled his personal funds with Technocel's, TYLT's and AWI's funds.

37.   Rostami's control over all the three entities allowed him to use them to perpetuate his fraudulent scheme.  Rostami first used his *alter ego* Technocel to purchase a significant amount of power chargers from suppliers such as Lucent and Salcomp, and after receiving the ordered power chargers from those suppliers, Rostami had Technocel to default on the invoices for the unpaid customized chargers.  As stated herein, prior to June 2017, Technocel already amassed at least $5.572 million in debt to Lucent and Salcomp alone.  On the heels of Technocel's insolvency, Rostami formed another *alter ego* of his own, TYLT, as a vehicle for him to continue his distribution business involving power chargers with the intent of avoiding Technocel's liabilities and acquiring most, if not all, of Technocel's assets below market value.  On information and belief, Rostami did have TYLT

acquire most, if not all, of Technocel's assets at below market through the GABC proceeding that he instituted to defraud creditors, such as Lucent.

38.    To delay Lucent's actions in light of the excessive debt, on January 4, 2018, Rostami claimed that he was winding down Technocel, but assured Lucent that Technocel "will send payments as soon as they liquidate everything" and that Rostami and Technocel's "successor" TYLT would be responsible for Technocel's debts.  Unbeknownst to Lucent, on January 8, 2018 - only four days after telling Lucent to wait for Technocel's liquidation, Mr. Rostami arranged for Technocel to transfer substantially all its assets to ISG as the assignee under the General Assignment Agreement (*see* Exhibit A at 3), effectuating the GABC proceeding as defined in Section 493.010 of the California Code of Civil Procedure and under California common law.  (2:17-cv-07807-JFW-SS (D.E. 34, 1:1-24).)  On information and belief, Rostami and Technocel intentionally failed to disclose to ISG that Lucent and others were creditors of Technocel.  Because ISG was not aware of Lucent as a creditor of Technocel, and Lucent was not aware of or was provided adequate notice of the GABC proceeding, the potential buyers of the assets of Technocel was limited to, on information and belief, Rostami who used his recently incorporated TYLT to acquire most, if not all, of the assets of Technocel from ISG under the GABC proceeding at below market value not long after the assignment.  On information and belief, ISG was not aware that Rostami was the sole shareholder of Rostami, or otherwise was not an arms-length transaction. (*Id.* (D.E. 55, 2:12-16).)  ISG transferred all of the titles and rights of the patents and trademarks assigned from Technocel to TYLT on the same day, January 8, 2018.  *See* Exhibit B at 3.

39.    On August 1, 2018, Rostami through "Intellectual Property Assignment Agreement" executed by TYLT and AWI (*see* Exhibit C at 3), further assigned from TYLT to AWI all titles and rights of the trademarks Technocel fraudulently transferred to TYLT for no value in consideration.

40.     On information and belief, Technocel, TYLT and AWI were, at all times controlled and managed by the same shareholder, director and officer, Mr. Rostami, who caused Technocel to transfer most, if not all, of its assets to TYLT to maintain Rostami's distribution business involving, at least, power chargers, and then transfer at least the trademark rights from TYLT to AWI for no valuable consideration.  On information and belief, Rostami intended for Technocel to have little to no funds available to satisfy Technocel's debt to Lucent.  And even if there would have been sufficient funds available to pay off Technocel's debt to Lucent, Rostami ensured that none of Technocel's debt to Lucent was paid as a result of the GABC proceeding by intentionally failing to identify Lucent as a Technocel creditor to ISG.  On information and belief, by further assigning at least Techocel's trademark rights from TYLT to AWI, Rostami intended that Lucent recover nothing from TYLT for TYLT's and Technocel's debts on those trademark assets.

41.     On information and belief, Rostami's manipulations of the affairs of Technocel, TYLT and AWI were designed to foster his own purposes and operated to the disadvantage of Lucent and other creditors of Technocel.  On information and belief, the fraudulent transfer of Technocel's assets to TYLT was done to escape liability resulting from Technocel's operations, and results in an inequity should Technocel's corporate veil not be pierced to impose liability on its sole shareholder, Rostami.

42.     Further, Rostami and his companies Technocel and TYLT consistently held Rostami and TYLT out as *alter egos* of Technocel, and indeed **commingled** their funds in making a partial payment to Lucent.  Between November 2017 to July 2018, to induce Lucent to continue supplying power chargers for Rostami's distribution business, Rostami, Technocel and TYLT repeatedly reassured Lucent that ***TYLT wouldl pay for, and Rostami would personally pay for Technocel's past-due invoices***; and that TYLT was merely a ***renaming*** of Technocel.  Lucent reasonably relied on such reassurances and continued fulfilling TYLT's purchase

orders.  In early June 2018, Rostami again represented to Lucent that he would pay with his *personal assets* - his family funds in Europe and confirmed on July 10, 2018 that he would pay $700,000 from *his family funds* towards Technocel's past dues to Lucent.  While Mr. Rostami stated on his July 10, 2018 e-mail that the $700k "does not have do anything with TYLT," he commingled his personal funds with TYLT and caused *TYLT* to make a partial payment of this amount to Lucent. Lucent reasonably relied on Mr. Rostami's and his employees' representations and so continued fulfilling TYLT's purchase orders until July 22, 2018.  On this day, after Rostami achieved what he had long intended, Rostami revealed his fraudulent scheme to Lucent by declaring that neither he nor either of his two companies would pay for any of the remaining past-due invoices.  Even then, Rostami still indicated *he had borrowed and paid Lucent over $3.5 million* over the year, again showing that he commingled his personal funds with the operating funds of Technocel and TYLT.

43.     Rostami and the employees at both TYLT and Technocel *commingled* the commercial transactions and obligations of TYLT and Technocel, by, for example, placing purchase orders to Lucent under the name of *Technocel* and then requesting Lucent to address its invoices to *TYLT*; and arbitrarily distributing payments between Lucent's invoices to Technocel and TYLT.  On information and belief, the power chargers supplied by Lucent benefited all of the Defendants as a result of their commingling funds.  On information and belief, Rostami, Technocel, TYLT and AWI commingled their funds by freely transferring the intellectual property rights among themselves, as stated herein.  For example, Rostami caused TYLT to transfer at least all of its trademark rights to AWI for no consideration in exchange.

44.     During all relevant time periods, being an officer (CEO of TYLT, Technocel and AWI, and also CFO of Technocel), sole or dominant board member and sole shareholder of all entities, Rostami controlled and managed Technocel,

TYLT, and AWI, including the finances and business practices which relate to Lucent's claims herein, and he delayed and prevented payment of Lucent's invoices for power chargers supplied to Technocel and TYLT.  In addition, as stated above, Rostami actively participated in corporate affairs of both Technocel and TYLT by communicating with Lucent regarding its invoices to Technocel and TYLT and payment of those invoices.  On information and belief, Rostami also actively participated in corporate affairs of AWI as the CEO of the company, and he personally signed the Intellectual Property Assignment Agreement on behalf of both AWI and TYLT.

45.     On information and belief, as the sole shareholder of Technocel, TYLT and AWI,  Rostami believes he may use Technocel and TYLT's corporate status to avoid liability for Lucent's unpaid invoices to Technocel and TYLT, despite the foregoing and his repeated promises that he would be personally liable for and would pay Lucent's invoices to Technocel and TYLT in order to induce Lucent to continue to fulfill purchase orders for power chargers that he sought to sell or already sold to his customers in carrying out his distribution business.  To prevent Lucent from attaching any asset of Technocel to satisfy Technocel's and TYLT's debts, Rostami further caused TYLT to assign to AWI for free Technocel's trademark rights that were fraudulently transferred to TYLT.  Thus, *a unity of interest and a single enterprise relationship* exists among Mr. Rostami, Technocel, TYLT, and AWI.

46.     Defendants' *alter ego* relationship is also revealed in their sharing of, on information and belief, all the employees, premises, and even lawyers.  During all relevant time periods, Technocel, TYLT and AWI shared the same corporate address, 685 Cochran Street.  *See* California Secretary of State Statement for TYLT, a true and correct copy of which is attached hereto as Exhibit E; California Secretary of State Statement for FTC (Technocel), a true and correct copy of which is attached hereto as Exhibit F; and Corporate Records & Business Registrations for

AWI, a true and correct copy of which is attached hereto as Exhibit G.  Further, during all relevant time periods, TYLT and Technocel shared the same employees, who held themselves as employees of both entities, including at least Ms. Paging Yang (who managed processing invoices from suppliers), David Yeh (who managed processing purchase orders), and Christina Valenzuela (who managed bookkeeping and accounting).  On information and belief, Merry Liu at NewAsiaGroup also worked for both Technocel and TYLT (beyond her employment with NewAsiaGroup, which, on information and belief, is an affiliate with Technocel, TYLT and Rostami).  On information and belief, AWI also shared the same employees of TYLT and Technocel for the relevant times.

47.     Moreover, Rostami, Technocel (though not appearing in this lawsuit in response to the original complaint), TYLT and AWI have used and are using the same lawyers and law firm - Farhad Novian and Jonathan A. Schaub of Novian & Novian LLP.  Mr. Novian and Mr. Schaub made appearances on behalf of both Rostami and TYLT in this case.  Further, Mr. Novian and Mr. Schaub represented Technocel in defending its breach of contract and fraudulent misrepresentation litigation brought by Salcomp.  On information and belief, Mr. Novian and Mr. Schaub were also involved in Technocel's GABC proceeding.  Moreover, Mr. Novian was the attorney of record for assignment of the trademarks between TYLT and AWI, as well as assignment of the same trademarks between Technocel and ISG, as well as ISG and TYLT.  (*See* Exhibit A at 2, Exhibit B at 2, and Exhibit C and 2.)

48.     Lucent has performed pursuant to the Contracts of the parties, but Defendants have refused to tender payment of Lucent's unpaid invoices to Technocel and TYLT, and for the power chargers that had been manufactured prior to TYLT's termination of its six purchase orders to Lucent.

49.     By virtue of Rostami's exercise of complete control of Technocel, TYLT and AWI's business practices and finances, and his use of undercapitalized

Technocel, TYLT and AWI as a mere instrumentality to avoid making payments owed to Lucent, Rostami, who owns and controls Technocel and TYLT, should be held jointly and severally liable for any obligations of Technocel and TYLT to Lucent through the doctrines of alter ego and/or single enterprise liability and piercing the corporate veil to prevent injustice.  Under the *alter ego* and/or single enterprise liability doctrines, AWI should also be held liable for Technocel's and TYLT's liabilities and disgorge any assets fraudulently transferred from Technocel and/or TYLT, to prevent any inequity.

## <u>COUNT I</u>
### (Fraudulent Misrepresentation & Inducement against All Defendants)

50.     Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

51.     As described herein, Rostami used his *alter egos* Technocel and TYLT as his instrumentalities to defraud Lucent and other power charger suppliers.  In perpetuating his fraudulent scheme, Rostami, through TYLT and Technocel, ordered from Lucent power chargers of $4,506,381 in contract value, agreed to pay this amount, and then defaulted.  On information and belief, as the sole shareholder, officer and director of both entities, Rostami possessed the financial projections, budgets, company business plans, and other material information, and thus knew the financial condition and the direction of both companies.  This excessive amount of default by Technocel and TYLT, on information and belief, was an outcome of Rostami's fraudulent scheme of procuring power chargers from Lucent without an intention to pay but telling Lucent that he would.

52.     Specifically, Defendants Rostami, TYLT and Technocel made false representations of material facts and/or concealed material facts in connection with the order and/or payment of the power chargers, and the financial status and business plan of Technocel and TYLT, including, among others:

- Repeatedly misrepresenting that Technocel and TYLT would pay for the power chargers within sixty days after invoice issuance when having no intent to do so and concealing the existing material facts that Technocel and TYLT were undercapitalized and thus unable to pay, for example:
  - Rostami and the employees at Technocel, including at least Ms. Paging Yang, repeatedly misrepresented their intent to Lucent, through the purchase orders placed by Technocel from August 2016 to November 2017 and e-mail correspondence related to Lucent's invoices, that Technocel would pay for the ordered power chargers within sixty days of delivery.
  - Rostami and the employees at TYLT, including at least Ms. Paging Yang, repeatedly misrepresented their intent to Lucent, through the purchase orders placed by TYLT from March to May 2018 and e-mail correspondence related to Lucent's invoices, that TYLT would pay for the ordered power chargers within sixty days after invoice issuance.
- Repeatedly requesting that Lucent continue shipping products while suppressing the fact that Defendants had no intention of paying for them and that Technocel and TYLT were undercapitalized and unable to pay, for example:
  - Rostami repeatedly requested Lucent to ship power chargers at least between February 2017 to July 2018, by misrepresenting his intention that Technocel will pay weekly installments and TYLT would be funded by loans for paying the ordered power chargers.
  - The employees at both Technocel and TYLT, including at least Ms. Paging Yang, repeatedly requested Lucent to ship power chargers at least between August 2016 to July 2018, by misrepresenting the facts, for example, that TYLT would lose business or incur a heavy fine.

- Repeatedly misrepresenting that Technocel and TYLT would make payments for the power chargers according to an agreed payment plan when in fact neither intended to do so to satisfy Technocel's and TYLT's total debts to Lucent, for example:
  - On around February 15, 2017, Rostami misrepresented his intent that Technocel will pay Lucent in weekly installments of $153,000.
  - On around August 2, 2017, Rostami misrepresented his intent that Technocel will pay Lucent the weekly installments of $200,000.
  - In around November 2017, Rostami misrepresented his intent that he would increase the weekly installments by an additional $200,000, where the $200,000 would be paid by TYLT in addition to the $200,000 paid by Technocel for Technocel's past-due invoices.
  - On around January 4, 2018, Rostami misrepresented his intent that the amount Technocel owed to Lucent for the power chargers supplied to Technocel would be paid by TYLT in weekly installments of $100K.
- Repeatedly misrepresenting that Rostami would make payments for the power chargers using his personal assets to satisfy the unpaid invoices, while concealing his fraudulent scheme of using TYLT and Technocel as his instrumentalities to procure power chargers for resale, and his intention not to do so, for example:
  - On January 4, 2018, Rostami misrepresented his intention that he will "send more payments from TYLT to Lucent" and he will "pay what is owed on Technocel side to [Steven] myself."
  - In early June 2018, Rostami misrepresented his intention that he will send Lucent his family's money in Europe.
  - On around July 10, 2018, Rostami misrepresented his intention that he will pay Lucent $700,000 from his family funds, and that does not have anything to do with Lucent.

- Misrepresenting material facts that Technocel was planning to send Lucent payments after liquidation:
  - Specifically, on January 4, 2018, Rostami misrepresented the material facts that he and Technocel were planning to send payments to Lucent after Technocel's liquidation.
- Misrepresenting that Technocel had no assets to pay Lucent's invoices while concealing Technocel's fraudulent transfer of its assets to TYLT.
  - On information and belief, Rostami had planned to fraudulently transfer Technocel's assets out to TYLT, another *alter ego* of his own, to avoid paying Technocel's debt to Lucent, when representing otherwise to Lucent.  Specifically, Rostami represented to Lucent that Technocel "will send payments as soon as they liquidate everything … in the next 90 days" but then Mr. Rostami caused Technocel's assets to transfer to TYLT under a GABC proceeding without providing or causing adequate and timely notice to Lucent of the GABC proceeding.
- Concealing material facts from Lucent that Rosami's *alter ego* entities TYLT and AWI were formed as a vehicle to avoid Technocel's liabilities to pay Lucent, as stated herein.

53.     On information and belief, Defendants knew these misrepresentations, omissions, and concealment of material facts were false, or at a minimum, acted recklessly as to the truth or falsity of the representations.

54.     On information and belief, Defendants intentionally or recklessly made the misrepresentations, omissions, and concealment for the purpose of inducing Lucent to continue manufacturing and shipping power chargers to Defendants, and to purposefully delay making payments to Lucent.

55.     On information and belief, Defendants intended for Lucent to rely on the misrepresentations, omissions, and concealment.

56.     Lucent reasonably and justifiably relied to its detriment on Defendants' misrepresentations, omissions, and concealment, by, for example, continuing manufacture and shipping of the power chargers to Defendants.

57.     As a direct and proximate result of the fraudulent inducement and misrepresentations, omissions, and concealment described herein, Lucent has suffered, and will continue to suffer, irreparable harm and injury including, but not limited to, substantial losses in revenue, loss of profits, discredit to its business reputation and loss of goodwill, loss of business relations with existing and future business prospects and loss of competitive business advantage, opportunity and/or expectancy.

58.     In the alternative, and/or in addition to the irreparable injury described herein, as a direct and proximate result of the conduct described above, Lucent has suffered and will continue to suffer damages in an amount to be proven at trial, and is entitled to recover these damages from Defendants.

59.     Further, to the extent Defendants' actions were done knowingly, intentionally, willfully, wantonly, maliciously and/or recklessly, Lucent is entitled to an award of exemplary or punitive damages.

## <u>COUNT II</u>
### (Negligent Misrepresentation against All Defendants)

60.     Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

61.     On information and belief, Defendants Rostami, and his *alter egos* Technocel, TYLT and AWI intended for Lucent to rely on the misrepresentation, omissions, and concealment.

62.     Lucent reasonably and justifiably relied to its detriment on the misrepresentations, omissions, and concealment of Defendants.  As a direct and proximate result of Defendants' representations, omissions, and concealment described herein, Lucent has suffered, and will continue to suffer, irreparable harm

and injury including, but not limited to, substantial losses in revenue, loss of profits, discredit to its business reputation and loss of goodwill, loss of business relations with existing and future business prospects and loss of competitive business advantage, opportunity and/or expectancy.

63.     In the alternative, and/or in addition to the irreparable injury described herein, as a direct and proximate result of the conduct described above, Lucent has suffered and still continue to suffer damages in an amount to be proven at trial, and is entitled to recover these damages from Defendants.

### COUNT III
**(Breach of Contract against All Defendants)**

64.     Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

65.     From at least August 2016 to November 2017, Rostami had Technocel issue a total of 145 purchase orders to Lucent, which were all accepted by Lucent. From March 2018 to May 2018, Rostami had TYLT issue a total of six purchase orders to Lucent, which were all accepted by Lucent.  This resulted in valid and enforceable Contracts between Lucent and Defendants TYLT and Technocel, and their *alter egos* Rostami and AWI, for good and valuable consideration.

66.     Lucent performed its obligations under the Contracts, except those conditions, covenants and obligations excused by Defendants' breach.

67.     Defendants materially breached their obligations under the Contracts by failing to pay Lucent for the power chargers Defendants received and/or ordered.

68.     As a direct and proximate result of Defendants' breach, Lucent has been damaged and continues to suffer damages.

69.     There is due and owing from Defendants to Lucent the principle sum of not less than $4,506,381, representing the contract price of the power chargers manufactured and delivered to Technocel - $2,408,259; and the contract price of the power chargers ordered by TYLT and manufactured by Lucent - $1,663,112.

70.     Lucent is entitled to interest on the foregoing amount and to such additional sums to be determined at trial as Lucent may be required to incur as a proximate cause of Defendants' breach.

## COUNT IV
### (Anticipatory Breach against Defendants Rostami, TYLT and AWI)

71.     Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

72.     Between on or about March 20, 2018 to on or about May 16, 2018, Rostami had TYLT issue a total of six purchase orders to Lucent, which were all accepted by Lucent.  This resulted in valid and enforceable Contracts between Lucent and Defendants Rostami and TYLT, as well as their *alter ego* AWI, for good and valuable consideration.

73.     Lucent manufactured all of the ordered power chargers, but on or about July 22, 2018, Rostami had TYLT manifests an unequivocal intention to breach the parties' Contracts.

74.     Rostami and TYLT's repudiation of their obligations under the Contracts constitutes an anticipatory breach.

75.     This threatened future breach has caused Lucent substantial damages in the principle sum of not less than $1,663,112, representing the contract price of the power chargers that Rostami and TYLT ordered.

76.     Lucent is entitled to interest on the foregoing amount and to such additional sums to be determined at trial as Lucent may be required to incur as a proximate cause of Rostami and TYLT's anticipatory breach.

## COUNT V
### (Promissory Estoppel against All Defendants)

77.     Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

78.     Rostami had Technocel issue a total of 145 purchase orders to Lucent from August 2016 to November 2017, and had TYLT issue a total of six purchase orders to Lucent from March to May 2018, representing that if Lucent shipped the power chargers to Defendants Technocel and TYLT, Defendants would render payment for such products within 60 days after invoice issuance.  Rostami, Technocel and TYLT further agreed to numerous payment plans for past due invoices on shipments already made, as stated herein.

79.     In so representing, Defendants Rostami, Technocel, TYLT, and their *alter ego* AWI knew or should have known that Lucent would be reasonably induced to rely upon those representations and expend significant time and resources to manufacture and/or deliver the goods to Defendants.

80.     Lucent did rely on Defendants' representations to its detriment, and manufactured and shipped power chargers of $2,408,289 to Technocel in value.  Having received and accepted the goods, Defendants failed to pay for them.

81.     Lucent also relied on Defendants' representations to its detriment, and manufactured power chargers of $1,663,112 in value in accordance with TYLT's purchase orders issued from March to May 2018.  Because these power chargers were customized pursuant to Defendants' specifications (printing their logo on the products), Lucent is not able to re-sell them to others to mitigate its damages.

82.     As a direct and proximate cause of Defendants' conduct, Lucent has been damaged and continues to suffer damages in an amount of at least $4,506,381 in unpaid invoices.

83.     Injustice can be avoided only by enforcing Defendants' promise to pay for all of the power chargers shipped to, and accepted by, Defendants, and enforcing TYLT's promise to purchase the remaining power chargers at the agreed upon price.

## COUNT VI
### (Unjust Enrichment against All Defendants)

84.     Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

85.     At Defendants Rostami and Technocel's request, Lucent manufactured and delivered power chargers of $2,408,289 in value to Technocel, which Lucent accepted, and manufactured to fulfill Technocel' orders.

86.     On information and belief, Rostami and his alter egos Technocel, TYLT and AWI resold the shipped power chargers to their customers, and received payment from those customers.

87.     Defendants have not paid Lucent for the power chargers it has manufactured, including those already shipped to and received by Technocel, despite repeated requests for payment and efforts that established a payment plan.

88.     Defendants have been unjustly enriched by the power chargers Lucent manufactured and shipped to Defendants, for which Defendants did not pay.

89.     On information and belief, Rostami and his alter ego TYLT have received a benefit because it received most, if not all, of Technocel's assets for an insignificant value, which is far less than the true and fair value of those assets.  On information and belief, AWI has received a benefit because it received, for providing no valuable consideration in exchange, all of Technocel's trademark rights through assignment by TYLT.

90.     It would be unjust to permit Defendants Rostami, TYLT and AWI to retain these benefits because they arose from a conspiracy to fraudulently shield Technocel's assets from its liabilities to Lucent.  This conspiracy was at the expense of Lucent because Rostami and Technocel failed to identify Lucent as a creditor of Technocel under the GABC proceeding and it resulted in Technocel's assets being emptied at below market value, and thus being unable to satisfy all or

part of its debts to Lucent even if it had been identified as a creditor to Technocel under the GABC proceeding.

91.     Pursuant to California Civil Code sections 2223 and 2224 and common law rules of constructive trust, TYLT is an involuntary trustee over those Technocel's assets TYLT acquired because it gained those assets by fraud.  Lucent is the beneficiary of this involuntary trust because Technocel's assets were conveyed to TYLT and AWI to shield them from attachment by Lucent.  Rostami, TYLT and AWI have a duty as the involuntary trustee of Technocel's assets to transfer all of these assets to Lucent.

92.     As a direct and proximate cause of Defendants' conduct, Defendants have been unjustly enriched and Lucent harmed in an amount to be proven at trial.

## COUNT VII
### (Fraudulent Transfer against All Defendants)

93.     Lucent incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

94.     The transfer of Technocel's assets from Technocel to ISG was made with actual intent to hinder, delay, and defraud Lucent, as exemplified by the following allegations:

- On information and belief, Rostami, the sole or dominant board member, the sole shareholder, and the CEO and CFO of Technocel, retains possession and control of Techncoel's assets after the transfer.

- The transfer of Technocel's assets to ISG was never disclosed to Lucent by Rostami, Technocel, TYLT or ISG.  On information and belief, Rostami and Technocel failed to disclose to ISG that Lucent was a creditor of Technocel, as required by Civil Code section 1802(c), which further demonstrates Rostami and Technocel's intention to prevent Lucent from participating in the GABC process to ensure it was effectuated on fair terms.  On information and belief, Defendants Rostami, Technocel

and TYLT concealed the transfer from Lucent in order to escape Technocel's liabilities to Lucent.

- Before the transfer was made, Rostami and Technocel were aware of its debt to Lucent and Lucent's rights as a creditor to benefit from Technocel's assets.

- On information and belief, the transfer was of most, if not all, of Technocel's assets, including its intellectual property rights.

- On information and belief, the value of the consideration received by Technocel was not reasonably equivalent to the fair market value of the assets transferred.

- On the dates on which Rostami caused Technocel to transfer assets to ISG, Technocel was insolvent as defined by Civil Code section 3439.02(a) in part because the total of Technocel's outstanding, matured debt obligations had, for several months, exceeded its assets.

- The transfer occurred four (4) days after Rostami's January 4, 2018 e-mail to Lucent, informing Lucent that "it's going through a company that will sell assets and divide between creditors," but "the company will send payments as soon as they liquidate everything … in the next 90 days," in an effort to prevent Lucent from claiming its credits against Technocel's assets.

95.    In addition, the transfer of Technocel's assets from ISG to TYLT was made with actual intent to hinder, delay, and defraud Lucent, as exemplified by the following factors:

- On information and belief, the transfer to TYLT was a transfer to an insider of both Technocel and TYLT - Mr. Rostami, the sole or dominant board member, the sole shareholder, and the CEO and CFO of both Technocel and TYLT.   Rostami, retains possession and control of Techncoel's assets after the transfer.

- The transfer of Technocel's assets was never disclosed to Lucent by Rostami, Technocel, TYLT or ISG.  On information and belief, Rostami and Technocel failed to disclose to ISG that Lucent was a creditor of Technocel as required by Civil Code section 1802(c), which further demonstrates Rostami and Technocel's intention to prevent Lucent from participating in the GABC process to ensure it was effectuated on fair terms.  On information and belief, Defendants Rostami, Technocel and TYLT concealed the transfer from Lucent in order to escape Technocel's liabilities to Lucent.

- Before the transfer was made, Rostami and Technocel were aware of its debt to Lucent and Lucent's rights as a creditor to benefit from Technocel's assets.

- On information and belief, the transfer was of most, if not all, of Technocel's assets, including its intellectual property rights.

- On information and belief, the value of the consideration received by ISG, as Assignee for Technocel was not reasonably equivalent to the fair-market value of the assets transferred.

- On the dates on which ISG transferred Technocel's assets to TYLT, Technocel was insolvent as defined by Civil Code section 3439.02(a) in part because the total of Technocel's outstanding, matured debt obligations had, for several months, exceeded its assets.

- On information and belief, the transfer to TYLT took place on the same day when Technocel signed the General Assignment Agreement with ISG, further demonstrating Rostami's intention to prevent Lucent and other Technocel's creditors from participating in the GABC process to make sure it was legal and on fair terms.

96.     Further, the transfer of Technocel's assets including the trademark rights from TYLT to AWI was made with actual intent to hinder, delay, and defraud Lucent, as exemplified by the following factors:

- On information and belief, the transfer to AWI was a transfer to an insider of both Technocel and TYLT - Mr. Rostami, the sole or dominant board member, the sole shareholder, and the CEO and CFO of both Technocel and TYLT.   Rostami, retains possession and control of Techncoel's assets after the transfer.

- The transfer of Technocel's assets to AWI was never disclosed to Lucent by Rostami, Technocel, TYLT, ISG or AWI.  On information and belief, Defendants Rostami, Technocel, TYLT and AWI concealed the transfer from Lucent in order to escape Technocel's and TYLT's liabilities to Lucent.

- Before the transfer was made, Rostami, Technocel and TYLT were aware of their debts to Lucent and Lucent's rights as a creditor to benefit from Technocel's assets.

- On information and belief, the transfer was of most, if not all, of Technocel's trademark rights.

- On information and belief, the value of the consideration received by TYLT, as Assignor of Technocel's trademark rights, was not reasonably equivalent to the fair-market value of the assets transferred.

- On the dates on which TYLT transferred Technocel's assets to AWI, TYLT was insolvent as defined by Civil Code section 3439.02(a) in part because the total of TYLT's outstanding, matured debt obligations had, for several months, exceeded its assets.

- On information and belief, the transfer to AWI took place on August 1, 2018, only ten days after Rostami, TYLT and Technocel repudiated to pay for the past-due invoices to Lucent, demonstrating Rostami's

intention to prevent Lucent from attaching TYLT's assets to satisfy Lucent's credit.

97.     As stated herein, Rostami and Technocel caused a transferof most, if not all, of its assets to TYLT through ISG without receiving a reasonably equivalent value in exchange for the transfer or obligation, and that TYLT was engaged in a business for which its remaining assets were unreasonably small in relation to the business or transaction.  On information and belief, Defendants Rostami and Technocel did not identify Lucent as a creditor to ISG as required by Civil Code section 1802(c), in an effort to hinder and delay Lucent from learning of the GABC proceeding.  Instead, Rostami asked Lucent to **wait for 90 days** for payments to come in, so that Lucent would not seek distribution of proceeds of the liquidation of Technocel's assets prior to the completion Rostami's fraudulent transfer of these assets to TYLT under Civil Code section 1802(b).  Unsurprisingly, Lucent never received a notice from ISG of the General Assignment of Technocel's assets as ISG should have under Civil Code section 1802(a).  On information and belief, on the same day the General Assignment became effective, ISG sold Technocel's assets to TYLT for an amount significantly below fair market value.

98.     On August 1, 2018, merely ten days after Defendants Rostami, TYLT and Technocel repudiated to pay the past-due invoices to Lucent, Rostami caused TYLT to assign AWI, for no valuable consideration, all titles and rights of the trademarks Technocel transferred to TYLT on January 8, 2018.

99.     In making the foregoing transfers, Defendants Rostami and his *alter egos* Technocel, TYLT and AWI had the actual intent to hinder, delay, or defraud Lucent from collecting on its lawful debts, as prescribed under Civil Code section 3439.04.  Rostami through TYLT and AWI effectively retained possession or control of the property transferred after the transfer.

100.   At all times mentioned herein, Defendants knew that Lucent's claim could only be satisfied in whole or in part out of the funds and assets Technocel

transferred away. Notwithstanding this knowledge, Defendants intentionally, willfully, fraudulently and maliciously did things alleged herein to defraud and oppress Lucent.

101. Rostami is further liable for these fraudulent conveyances of Technocel's assets because they were each and all part of a civil conspiracy to commit the tort of fraud. As stated herein, Rostami planned to shield Technocel's assets from satisfying its liabilities to Lucent by fraudulently conveying those assets to TYLT at well-below fair market value via ISG, and then part of those assets including the trademark rights from TYLT to AWI at no value.

102. As a direct and proximate result of the wrongful acts herein alleged, Lucent has been damaged in that Technocel and TYLT were emptied of assets to attach.

103. Lucent is entitled to void all the money and asset transfers made by Technocel to TYLT and/or AWI under at least Civil Code section 3439.04 and 3439.05, and Lucent is entitled to compensatory damages from all Defendants in an amount to be proven at trial.

104. Upon information and belief, Defendants Rostami, Technocel, TYLT and AWI committed the acts alleged herein maliciously, fraudulently, and with the wrongful and deliberate intention of injuring Lucent and benefiting themselves and acted with an improper motive amounting to malice and conscious disregard of Lucent's rights. Accordingly, Lucent is entitled to recover punitive and exemplary damages from Defendants in accordance with California Civil Code section 3294.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in its favor and against Defendants as follows:

1.     That Rostami, TYLT and AWI are *alter egos* of Technocel, and that Rostami, TYLT, AWI and Does 1-10 are liable for Technocel's and TYLT's acts and omissions and thus all of the claims asserted against Technocel herein;

2.     That Rostami and AWI are *alter egos* of TYLT, and that Rostami, AWI and Does 1-10 are liable for TYLT's acts and omissions and thus all of the claims asserted against TYLT herein;

3.     That all Defendants have fraudulently misrepresented and induced Lucent as pled in Count I;

4.     That all Defendants have negligently misrepresented to Lucent as pled in Count II;

5.     That all Defendants have breached the Contracts as pled in Count III;

6.     That Defendants Rostami and TYLT have anticipatorily breached the Contracts as pled in Count IV;

7.     That all Defendants be liable for promissory estoppel as pled in Count V;

8.     That all Defendants have been unjustly enriched as pled in Count VI;

9.     That all Defendants have fraudulently transferred Technocel's assets to TYLT and AWI as pled in Count VII;

10.    That Lucent be awarded all damages incurred by Lucent, including but not limited to $4,506,381 because of Defendants' activities and conduct alleged herein in connection with this action;

11.    That Lucent be awarded attorney's fees where applicable;

12.    That Lucent be awarded exemplary and punitive damages;

13.    That Lucent be awarded pre-judgment and post-judgment interest on all damages award;

14.    That the money and asset transfers from Technocel to TYLT and AWI be set aside; and that Lucent recover all interests and profits derived from such transfers, as ill-gotten gains;

15.     That Rostami, TYLT, AWI and Does 1-10 be preliminarily and permanently enjoined from further disposing or dissipating any of the moneys and assets transferred to them from Technocel;

16.     That Lucent be awarded a full accounting of the damages above, including for past damages and any continuing or future damages; and

17.     That Lucent be awarded such other and further relief as the court may deem just and proper.

DATED:  January 14, 2019                    **PERKINS COIE LLP**


By: _/s/ Yun (Louise) Lu_
    John P. Schnurer, Bar No. 185725
    JSchnurer@perkinscoie.com
    Yun (Louise) Lu, Bar No. 253114
    LLu@perkinscoie.com

Attorneys for Plaintiff
LUCENT ELECTRONIC CO., LTD.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 14, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.  Any other counsel of record will be served by electronic mail.

By: */s/ Yun (Louise) Lu*